```
                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF TENNESSEE
                          NASHVILLE DIVISION

JULIE SMITH,                    )
                                )
        Plaintiff,              )
                                )
    v.                          )    Case No. 3:05-1029
                                )    Judge Echols
                                )
HCA, INC. d/b/a HCA             )
HEALTHCARE PATIENT              )
ACCOUNTING SERVICES,            )
                                )
        Defendant.              )
```

## MEMORANDUM

Pending before the Court is Defendant HCA Management Services, L.P.'s ("HMS'"[1]) Motion for Summary Judgment (Docket Entry No. 17) to which Plaintiff Julie Smith ("Smith") has responded in opposition (Docket Entry No. 22) and Defendant has replied (Docket Entry No. 24).

## I. FACTS

For the most part, the facts are undisputed. They are as follows.

In January 2002, Smith became employed at HMS as a Project Coordinator in its Patient Accounting Services ("PAS") group in Nashville. As a Project Coordinator, Smith managed projects among different departments within the PAS and between the PAS and HMS'

---

[1] By Agreed Order entered February 22, 2006 (Docket Entry No. 10), HCA Management Services, L.P. was substituted as the proper defendant in this action.

1

corporate group. She traveled approximately forty percent of the time in the performance of her job duties.

HMS has a Leave of Absence policy ("the leave policy"), including a policy for leaves under the Family and Medical Leave Act ("FMLA"). Under that policy, an employee requesting FMLA leave must complete a request form and submit a physician's certification to support the need for the leave. When an employee is able to return to work, he or she must provide a note from the treating physician releasing the employee to return to work. If an employee returns to work within twelve weeks, the employee is reinstated to his or her former position, or to an equivalent position with equivalent pay, benefits, and working conditions.

Under the leave policy, an employee who has a serious health condition and is unable to return to work after twelve weeks of FMLA leave may be placed on a general medical leave of absence. An employee seeking reinstatement from a general medical leave of absence is not entitled to reinstatement to his or her former position. The employee may be offered any available position for which HMS concludes he or she may be qualified, at the rate of pay for the new position. If there are no such positions available, the employee may be placed on a "priority hiring status" for ninety days, which is an unpaid leave of absence that is used while HMS considers the employee for vacancies for which HMS deems that the employee may be qualified. If no such position becomes available

2

within ninety days, the employee is discharged. In the event an employee coming off leave declines an offer of reinstatement to any full or part-time position, the employee may be discharged.

Smith was diagnosed with glaucoma in August 2002. She was found to be legally blind in October 2003.

On April 25, 2005, Smith requested and received FMLA leave under the policy so that she could undergo eye surgery. Smith was advised that her FMLA leave would expire on July 13, 2005.

When Smith's FMLA leave expired, Smith's treating physician had not yet released her to return to work. Smith was notified by HMS that her FMLA leave had expired and advised her that it was not required to hold her job open.

On July 18, 2005, Smith requested and received a general medical leave of absence. Smith knew that when she took her general medical leave, her position as Project Coordinator would no longer be held for her.

On August 15, 2005, almost one month after Smith's FMLA leave expired, HMS declared the Project Coordinator position vacant. It then filled the position with a temporary contract worker until Holly Gerald was selected on September 22, 2005 to succeed Smith.

Smith was released to return to work on October 17, 2005, although the medical release was not provided to HMS until November 16, 2005. When Smith submitted the necessary return to work documents on November 16, 2005, she was placed on a ninety-day

3

priority hiring status effective October 17, 2005.

During Smith's ninety-day priority hiring period, HMS considered her for several positions in the Information Technology and Service ("IT&S") and Project Management departments. These included some Business Analyst positions and a director-level position in the Supply Chain department. It was determined, however, that Smith was not qualified for any of the available positions.

Also during the priority hiring period, Smith was offered a job as an IT&S Implementation Analyst. However, she declined the position because she preferred not to travel.

On January 17, 2005, Smith's ninety-day priority hiring status period expired. Bill Carver, Director of Employee Relations, offered to extend the priority hiring status period, but Smith declined his offer, which resulted in the termination of her employment. Nevertheless, HMS still considered Smith for vacant positions as late as February 8, 2006. She moved to Kansas in March 2006.

Neither Smith's eyesight nor any of her medical restrictions affected her ability to perform the functions of the Project Coordinator position. Further, Smith's eyesight does not affect any activity other than her ability to drive in congested traffic and to walk in unfamiliar areas. No physician has advised Smith that she cannot drive and she holds a valid driver's license. In fact,

4

when Smith worked at HMS, Smith drove from her residence in Hermitage, Tennessee to the PAS offices on Lebanon Road in Nashville.

## II. **STANDARD OF REVIEW**

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex,

5

477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. APPLICATION OF LAW

Smith's sole claim is brought under the Tennessee Handicap Act ("THA"), T.C.A. § 8-50-103. She asserts HMS failed to return her to the Project Coordinator position after her leaves of absence and then terminated her employment because HMS perceived that her "legal blindness" precludes her from working.

Because the THA was enacted to prohibit discrimination in a manner consistent with federal civil rights law, courts in Tennessee may "'look to federal law for guidance in enforcing [Tennessee's] anti-discrimination laws,'" including "cases that interpret the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 791, for purposes of interpreting the provisions of the THA." Chandler v. Specialty Tires of Am., 139 Fed. Appx. 921, 925 (6th Cir. 2005) quoting, Barnes v. Goodyear Tire and Rubber Co., 48 S.W.3d 698, 705 (Tenn. 2000).

"[A]n individual alleging discrimination under the THA must

6

show: (1) that the individual was qualified for the position; (2) that the individual was disabled; and (3) that the individual suffered an adverse employment action because of that disability." Barnes, 48 S.W.3d at 705. With regard to the second element, that the employee be disabled, the THA embodies the definitions contained in the Tennessee Human Rights Act which defines handicapped (disabled) individuals as including individuals who are perceived or regarded as having an impairment which substantially limits a major life activity. Id.

In this case, Plaintiff claims she was perceived as being unable to perform her job as a Project Coordinator. That is, Plaintiff claims that after her leave of absence she was able to perform her job but Defendant perceived her as being unable to perform that job. Leaving aside for the moment that Plaintiff offers no evidence to support her contention about Defendant's perception, her claim fails because that perception is related only to her former job of Project Coordinator.

The Sixth Circuit "has repeatedly held that the major life activity of working is not substantially limited simply because an employee's physical or psychological impairment prevents h[er] from performing a particular job." Agnew v. Heat Treating Serv. of Am., 2005 WL 3550532 at *5 (6th Cir. 2005)(collecting cases). "To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized

7

job, or a particular job of choice." Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999).

"Proving that an employee is regarded as disabled in the major life activity of working takes a plaintiff to the farthest reaches of the ADA," Ross v. Campbell Soup Co., 237 F.3d 701, 709 (6th Cir. 2001), and, by analogy, the THA. "Not only must a plaintiff demonstrate that an employer thought [s]he was disabled, [s]he must also show that the employer thought that h[er] disability would prevent h[er] from performing a broad class of jobs." Id.

In this case, Smith offers no evidence about HMS' perception of her ability with respect to jobs other than that of Project Coordinator. Even if it is assumed that HMS believed Smith could not work as a Project Coordinator, the record suggests that HMS did not perceive her as being otherwise unable to work. In fact, after Smith was released to return to work, HMS considered her for several jobs and in fact offered her a position which she declined. These events show that Smith was not perceived as being substantially limited in the major life activity of working and hence her THA claim fails.

In an effort to avoid summary judgment, Smith's sole argument is that because HMS' perception is subjective, an issue of fact exists. That is, Smith argues "the motives and credibility of the parties are matters of fact for the jury, not a matter of law for the court" and therefore, "it is the jury, not the court, that must

8

in the final analysis determine the purity of the defendant's corporate heart." (Docket Entry No. 22 at 3 & 6).

As Smith correctly notes, the Sixth Circuit has observed that perception of a disability "'involves examination of an employer's state of mind[.]'" Id. at 3 (quoting McElroy v. Phillips, 127 Fed. Appx. 161, 168 (6th Cir. 2005)). But contrary to what Plaintiff is attempting to suggest, "perceived as" disabled cases, like other cases, are susceptible to summary judgment. Indeed in McElroy itself, the Sixth Circuit affirmed the grant of summary judgment in a "perceived as" case where, as here, the evidence "is not sufficient to lead a rational trier of fact to find [Defendant] believed [Plaintiff] had a disability that would prevent h[er] from performing a broad class of jobs." Id. Other Sixth Circuit cases have found summary judgment appropriate in "perceived as" disability cases as well. See e.g., Dunaway v. Ford Motor Corp., 134 Fed. Appx. 872, 877 n.3 (6th Cir. 2005)(summary judgment not precluded where plaintiff "did not even present a modicum of evidence the employer perceived him as disabled"); Cotter v. Ajilon Serv., Inc., 287 F.3d 593, 601 (6th Cir. 2002)("[u]ltimately, [Plaintiff] has not offered sufficient evidence to support a conclusion by a rational trier of fact that he was disabled or regarded as disabled within the meaning of the ADA").

In any event, even if it is assumed that HMS perceived Smith as having a handicap or disability, summary judgment would be

9

appropriate. This is because HMS has set forth a legitimate non-discriminatory reason for its action which Smith has not shown to be pretextual. See, Barnes, 48 S.W.3d 698 at 708 (Tenn. 2000)(indicating McDonnell Douglas/Burdine paradigm is used in indirect cases of disability discrimination under the THA).

HMS' leave policy allowed it to fill the Project Coordinator position after Smith's FMLA leave expired. At the time HMS decided to fill Smith's position as a Project Coordinator, Smith had already exhausted her FMLA leave but was not released to return to work, meaning that she was not qualified for the position. Inability to return to work following an FMLA leave can constitute a legitimate non-discriminatory reason for discharge under the THA and ADA. Roberson v. Cedant Travel Serv. Inc., 252 F.Supp.2d 573, 582 (M.D. Tenn. 2002).

Because HMS has set forth a legitimate non-discriminatory reason for its employment decision, the burden shifts to Smith to show that the proffered reason was pretextual. This requires Smith to show that the proffered reason had no basis in fact, did not actually motivate her discharge, or was insufficient to motivate her discharge. Manzer v. Diamond Shamrock Co., 29 F.3d 1078, 1084 (6th Cir. 1994).

In her brief, Smith does not even address pretext. However, in her deposition, Smith attempted to compare her treatment with that of two other HMS employees, Gerald Schultz ("Schultz") and

10

Dallas Davidson ("Davidson"), both of whom were allegedly allowed to return to their previous positions after being on FMLA leave. This comparison, however, is insufficient to show pretext.

Smith does not know the circumstances under which either Schultz or Davidson were allowed to return to work, or even if, upon their return to work, they had exhausted all of their leave. Moreover, Smith does not show that Schultz and Davidson were similarly situated to her and in fact admits that Schultz was a Manager and Davidson was employed in HMS' Las Vegas office. Hence, Smith has forwarded insufficient evidence from which a jury could determine that the proffered reason given by HMS for filling the Project Coordinator position was a lie. See, Weigel v. Baptist Hosp. of East Tennessee, 302 F.3d 367, 378 (6th Cir. 2002)(citation omitted)("In order to show that an employer's proffered non-discriminatory explanation is pretext on the grounds that a similarly situated employee received disparate treatment for the same conduct, 'the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the relevant respects").

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Docket Entry No. 17) will be granted and this case will be dismissed.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

12

Case 3:05-cv-01029   Document 25   Filed 01/03/07   Page 12 of 12 PageID #: 222